UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| GARTH S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00016-MJD-JMS[2] |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Garth S. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] On January 24, 2022, the parties filed a joint consent to the jurisdiction of the assigned magistrate judge. [Dkt. 7.] On that same date, Judge Magnus-Stinson referred the matter to Magistrate Judge Pryor, who was the assigned magistrate judge at that time. [Dkt. 8.] On December 12, 2022, this matter was reassigned from Magistrate Judge Pryor to the undersigned. [Dkt. 15.] Pursuant to the order referring the case to the assigned magistrate judge, the parties' consent to the undersigned became effective thirty days after the date of reassignment if no objection was filed. [Dkt. 8.] Thirty days have passed since the reassignment, and no objection has been filed.

Claimant applied for SSI in November 2019, alleging an onset of disability as of February 1, 2019. [Dkt. 9-6 at 2.] Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Kevin Walker ("ALJ") on May 13, 2021. [Dkt. 9-2 at 30.] On June 4, 2021, ALJ Walker issued his determination that Claimant was not disabled. *Id.* at 16. The Appeals Council then denied Claimant's request for review on November 10, 2021. *Id.* at 2. Claimant timely filed his Complaint on January 13, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382. Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 416.920. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC")

2

by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since his application date of November 11, 2019. [Dkt. 9-2 at 18.] At step two, the ALJ found that Claimant had severe impairments of a back disorder, torn cartilage in the left knee, a bone spur in the left foot, arthritis, and hypertension. *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 20. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 416.967(c), "except the claimant is limited to frequent use of foot controls with the left lower extremity." [Dkt. 9-2 at 20.]

3

At step four, the ALJ found that Claimant was able to perform his past relevant work as a forklift driver and front-end loader. *Id*. at 24. Accordingly, the ALJ concluded Claimant was not disabled. *Id.*

## IV. Discussion

Claimant argues that this matter should be remanded because (1) the ALJ's decision is based on cherry-picked evidence; (2) the ALJ failed to build a logical bridge from the evidence to his RFC conclusions; (3) the ALJ conducted a faulty SSR 16-3p analysis of his subjective symptoms; and (4) the ALJ erred in assessing the medical opinions in the record. The Court will address these arguments, as necessary, below.

### A. Subjective Symptom Analysis

Claimant argues that there are "two critical defects" in the ALJ's decision: that the ALJ "failed to build an accurate and logical bridge between the evidence and his conclusions" and failed "to adequately explain how certain evidence of 'normal' findings and functioning outweighs evidence undermining the ALJ's conclusions, rendering the Decision unreliable.'" [Dkt. 11 at 8.] Claimant then argues that these errors are "best reflected in the ALJ's assessment of [Claimant's] statements." *Id.* The Court agrees that the ALJ failed to adequately explain and support his subjective symptom evaluation.

In arriving at his determination of non-disability, the ALJ evaluated Claimant's subjective symptoms pursuant to 20 C.F.R. § 416.929 and SSR 16-3p. [Dkt. 9-2 at 22.] SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a

4

claimant's symptoms, such as pain, and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4. At this step, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3). When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

      The ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The Court's review of an ALJ's credibility determination is generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The ALJ's determination may be patently wrong where he fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006)

5

(quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)).

In this case, after summarizing Claimant's hearing testimony about his symptoms and the medical evidence on record, the ALJ explained his subjective symptom evaluation as follows:

> Inconsistencies between the claimant's statements and the rest of the medical evidence cause the undersigned to determine that the individual's alleged symptoms are less likely to reduce the claimant's capacity to perform work-related activities. I have also considered the consistency of the claimant's testimony concerning symptoms with statements in the record made prior to the hearing. Evaluation of the claimant's symptoms in comparison to the claimant's prior statements and the medical records as a whole is described below with specific examples supporting my decision that the claimant's symptoms are less likely to reduce the claimant's capacity to perform work-related activities (See SSR 16-3p).
>
> First, the objective evidence of record is inconsistent with the claimant's allegations in this case, as set forth above. The record does not demonstrate the significantly limited range of motion, motor weakness, neurological deficits, or sensation loss that are associated with intense and disabling pain (Ex 2F, 4F-6F). Further, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The claimant's treatment was generally sparse, and when the claimant did receive treatment, it was generally conservative and routine and the objective findings were consistently minimal. In addition, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant admitted to taking care of his wife, who is disabled, yet later stated his wife and son do most of the household chores. Notably, there is evidence of failure to cooperate, such as not attending a State agency consultative examination despite being offered to him at no personal expense. The objective and other evidence of record indicates the claimant experiences some limitation, but not to such a degree that he is prevented from performing work at the medium exertional level with a limitation that takes into account his left lower extremity pain and weakness. I also considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity pursuant to SSR 19-2p.

[Dkt. 9-2 at 22-23.]

The Court can glean three reasons why the ALJ discounted Claimant's subjective symptoms from the ALJ's explanation: (1) conservative treatment; (2) activities of daily living; and (3) normal exam findings.

### i. Conservative Treatment

Claimant argues that the ALJ's conclusion that Claimant "has not generally received the type of medical treatment one would expect" and that Claimant's treatment has been conservative and routine is troublesome because the ALJ did not tie the first conclusion to any specific evidence and did not consider the particular reasons why Claimant's course of treatment may have been conservative. Many courts have encountered an ALJ who discounts a claimant's statements because he had not received the type of treatment one would expect. *See Lopez v. Berryhill*, 340 F. Supp. 3d 696, 702 (N.D. Ill. 2018) ("This is a fairly common reason ALJs advance for disbelieving a claimant but, almost invariably, they do not explain what type of treatment they expect a disabled individual to have."); *Voigt v. Colvin*, 781 F.3d 871, 877 (7th Cir. 2015) (ALJ discounted back pain because claimant did not undergo expected treatment for someone with disabling pain, but never explained what additional treatment would be expected or why that treatment would be medically appropriate); *Teer v. Astrue*, 2012 WL 4118021, at *6 (S.D. Ind. Sept. 18, 2012) (ALJ erred when offering no explanation as to what type of treatment would be expected). Here, too, the ALJ never explained what treatment he would have expected Claimant to undergo or, more importantly, why it would have been medically appropriate to undergo that treatment.

Second, although Claimant was consistently treated with narcotic medication for his pain, the ALJ concluded that this treatment was conservative. However, a number of courts have concluded that a treatment plan consisting of narcotic medication is not necessarily conservative.

*David A. v. Berryhill*, 2019 WL 5381884, at *6 (N.D. Ill. Oct. 21, 2019) (collecting cases); *see also Michael C. v. Saul*, 408 F. Supp. 3d 919, 925 (N.D. Ill. 2019) (treatment with injections and narcotics should bolster, not detract, from the credibility of pain allegations).

  Third, although the ALJ deems Claimant's treatment history conservative and routine, and faults him for failing to show up for a consultative exam, the ALJ does not appear to consider the possible reasons underpinning these treatment limitations.  For example, although Claimant provided various reasons throughout the record, including at the hearing, for why he could not always attend medical appointments or stopped going to therapy, such as being without a vehicle for transportation or the fact that his therapist retired, the ALJ did not appear to consider these reasons.  *See* [Dkt. 9-2 at 43; Dkt. 9-7 at 12; Dkt. 9-9 at 51].  This was error.  *See Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (citing *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ may not draw inferences about a claimant's condition from the failure to follow a treatment plan unless the ALJ has explored the explanations for the lack of medical care)); *Patrick S. v. Kijakazi*, 2022 WL 4591458, at *6 (S.D. Ind. Sept. 30, 2022) (remand required because ALJ not permitted to draw negative inference regarding lack of treatment without first considering explanation).  The ALJ here did not consider Claimant's reasons for missing appointments or not seeking additional treatment.  The ALJ's decision to discount Claimant's subjective symptoms based on allegedly conservative treatment is thus not supported by substantial evidence.

  *ii. Activities of Daily Living*

  As noted previously, the ALJ discounted Claimant's subjective symptoms because his daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations" and Claimant "admitted to taking care of his wife, who is disabled,

8

yet later stated his wife and son do most of the household chores." [Dk. 9-2 at 23.] The ALJ summarized Claimant's daily activities as follows:

> The claimant lives with his wife and 28-year-old son. His wife is on social security disability. During a typical day, he eats, watches television and takes care of his wife. He occasionally grocery shops with his wife and son. He occasionally attends church. He babysits his grandkids, ages 4 and 6, for a few hours every day. He typically walks a block for exercise.

*Id.* at 21.

Claimant argues that the ALJ's analysis of his activities of daily living was flawed because "the ALJ did not address the *qualifications* with which [Claimant] performs such activities." [Dkt. 11 at 13] (emphasis in original). Claimant is correct that it is error for an ALJ to point to a claimant's daily activities as contradicting the claimant's subjective symptom allegations without considering the manner in which the activities are performed. *Craft*, 539 F.3d at 680. In this case, the Claimant testified that he cares for his disabled wife "a little bit where [he] can" and that when his grandchildren come over a few times each week he "colors and draws with them a little bit." [Dkt. 9-2 at 44, 49.] As to attending church weekly, Claimant stated that he cannot sit through an entire service and often leaves early. *Id.* at 48-49. Additionally, the ALJ also left out the qualifications of Claimant performing other daily activities. For example, Claimant only helps make simple foods and does not prepare full meals; does only "mild cleaning" which takes him more than half a day with encouragement; he needs reminders to engage in personal care and take his medications; and he becomes "cranky" easily over small things. [Dkt. 9-7 at 12-30.]

It was error for the ALJ to rely on the fact that Claimant could care for his wife and grandchildren, grocery shop, and attend church without recognizing and accounting for his limitations in carrying out these tasks. Further, the ALJ erred by failing to explain how

9

Claimant's quite limited activities of daily living, as he performs them, are inconsistent with his alleged symptoms. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("[T]he ALJ did not explain why doing these household chores was inconsistent with [the claimant's] description of her pain and limited mobility. Nor is any inconsistency obvious, so the ALJ did not substantiate the finding that [the claimant's] daily activities reveal any exaggeration of [the claimant's] limitations."); *Sam K. v. Saul*, 391 F. Supp. 3d 874, 881 (N.D. Ill. 2019) (same). Nor does the ALJ explain how those activities, as Claimant performs them, constitute evidence that Claimant can perform the type of full-time work the ALJ found him capable of. As the Seventh Circuit has explained,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, [claimant's] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Thus, the Seventh Circuit has held that "[w]ithout acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [the claimant's] successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible." *Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Bjornson*, 671 F.3d at 647). It was error for the ALJ to do so here.

    *iii. Normal Exam Findings*

Claimant contends that the ALJ's statement that "[t]he record does not demonstrate the significantly limited range of motion, motor weakness, neurological deficits, or sensation loss that are associated with intense and disabling pain" is misguided and unsupported. [Dkt. 11 at

11-12.] The Court agrees. ALJ never explains why only these exam findings could support Claimant's allegations of pain—especially in light of the fact that no medical expert opined that these findings were required to substantiate Claimant's claim—and why the exam findings that Claimant did present, such as a positive straight leg raise test and limited range of motion on exam, were insufficient. *Cf. Matthew M. v. Kijakazi*, 2021 WL 5879068, at *8 (S.D. Ind. Dec. 13, 2021) ("Given that these findings exist simultaneously in the same medical records, it is unclear why the ALJ—acting without a medical opinion on the matter—appears to treat them as mutually exclusive. Put differently, the issue of whether the findings of normal strength and muscle tone, getting on and off the examination table without difficulty, normal straight leg testing, and normal range of motion are either consistent with or preclusive of findings of chronic pain, antalgic gait, swelling, or inability to stand or walk for significant periods of time is likely a conflict that a doctor should resolve."); *see also Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (quoting *Villano*, 556 F.3d at 562) ("An 'ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it.'"); *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (same); 20 C.F.R. § 416.929 ("However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

      Although the Court will defer to an ALJ's subjective symptom finding that is not patently wrong, the ALJ must still adequately explain his subjective symptom evaluation "by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367. Here, the ALJ failed to fulfill his obligation to explain and adequately support his subjective symptom evaluation. Thus, remand is required to correct this error.

### B. Remaining Arguments

Claimant's additional arguments do not require extensive discussion. Claimant argues that the ALJ erred in his assessment of the medical opinions of record. The Court agrees. The ALJ's rejection of the consultative examiner's opinion was based, at least in part, on the fact that it was based on Claimant's subjective symptoms, which the ALJ found less than fully credible. Because, as set forth above, the ALJ must reevaluate his findings regarding Claimant's subjective symptoms, he must also reevaluate his assessment of the examiner's opinion. Further, with regard the opinions of Claimant's treating physician, the Court agrees with Claimant that the ALJ's conclusion that "the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly as limited as the doctor has reported, and the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact this limited," [Dkt. 9-2 at 23], is erroneous because it is unsupported by any medical evidence and instead appears to be based solely on the ALJ's lay opinion of the type of treatment and findings "one would expect" to find. *Cf. Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022) (finding error because the ALJ "strayed beyond his expertise as an adjudicator and into the forbidden territory of 'playing doctor.'") (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("The ALJ impermissibly 'played doctor' and reached his own independent medical conclusion when he determined that '[t]he level of treatment received also fails to infer limitations beyond the limitations described above in this decision.'"). On remand, the ALJ shall reassess the weight given to the medical opinions of record, taking care to explain his conclusions and point to substantial evidence of record that supports those conclusions.

Claimant also argues that the ALJ's RFC determination is erroneous. That determination must be reassessed on remand as well, given that it will depend on the ALJ's reassessment of Claimant's subjective symptoms and the medical opinions of record.

## V. Conclusion

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Claimant benefits and **REMANDS** this matter for further proceedings.

SO ORDERED.

Dated: 13 JAN 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.